UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JOSEPH A FERRARA, SR., FRANK H. FINKEL,
MARC HERBST, DENISE RICHARDSON,
THOMAS F. CORBETT, ANTHONY D'AQUILA,
THOMAS GESAULDI, LOUIS BISIGNANO,          **REPORT AND**
DOMINICK MARROCCO, and ANTHONY PIROZZI,    **RECOMMENDATION**
as Trustees and Fiduciaries of the Local 282 Pension Fund,    CV 11-0661 (ADS) (GRB)

                Plaintiffs,

    -against-

PI TRUCKING CORP.,

               Defendant.
------------------------------------------------------------------------X

**GARY R. BROWN, United States Magistrate Judge:**

    This matter has been referred by District Judge Spatt for the purpose of issuing a report and recommendation as to the damages to be awarded to the plaintiffs on the default of the defendant, PI Trucking Corp. ("PI Trucking"). *See* Docket Entry ("DE") [8]. Based on the evidence submitted, it is recommended that plaintiffs be awarded the following: $161,454 in withdrawal liability; interest in the amount of $57,008.74 through March 18, 2011, with additional per diem interest of $79.62 from March 19, 2011 through the date of judgment; additional damages in the amount of $57,008.74 through March 18, 2011, with additional per diem interest of $79.62 from March 19, 2011 through the date of judgment; and attorneys' fees and costs in the amounts of $3,185 and $511.14, respectively.

## BACKGROUND

    Plaintiffs are the Trustees and fiduciaries of the Local 282 Pension Trust Fund ("the Fund"). Defendant PI Trucking was a party to series of collective bargaining agreements with Local 282 ("the Union"). Compl. ¶7, DE [1]. Under those agreements, PI Trucking was

required to make contributions to the Fund. *Id*. In or about March 2007, PI Trucking ceased operations and/or "ceased to have an obligation to contribute to the Fund" and thus withdrew from the Fund within the meaning of §4203(a) of ERISA. Compl. ¶8.

The Fund calculated PI Trucking's withdrawal liability under the statutory guidelines to be $161,454.00, notified PI Trucking of that determination, and demanded payment by Notice and Demand in March 2009. Compl. ¶9. The Notice and Demand required PI Trucking to make monthly payments to the Fund over a thirty-two month period starting on April 1, 2009. Compl. ¶10. PI Trucking failed to make any payments and no arbitration proceeding has been initiated pursuant to 29 U.S.C. §1401(a). By letter dated, September 21, 2009, the Trustees sent a notice of default letter to PI Trucking and gave it 60 days to cure.

This action was commenced on February 10, 2011 by the plaintiff Trustees to recover the withdrawal liability, plus interest, liquidated damages, and attorneys fees and costs pursuant to ERISA. Plaintiffs moved for a default judgment on March 21, 2011 and the Clerk of the Court noted defendant's default on April 11, 2011. By Order dated April 27, 2011, Judge Spatt entered a default against PI Trucking and referred the matter to Magistrate Judge Arlene Lindsay for a report and recommendation on damages. Judge Lindsay gave the parties an opportunity to submit papers on the issue of damages. *See* DE [9]. Plaintiffs elected to rely upon their papers submitted in support of their motion for a default judgment, *see* DE [10], and defendant failed to submit any opposition. On November 18, 2011, the matter was re-assigned to the undersigned.

## DISCUSSION

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L.*

*Realty Corp.,* 973 F.2d 155, 158 (2d Cir.), *cert. denied,* 506 U.S. 1080 (1993). A default also "effectively constitutes an admission that the damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged." *Cablevision Sys. New York City Corp. v. Abramov,* 980 F. Supp. 107, 111 (E.D.N.Y. 1997). The movant must prove that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound,* 973 F.2d at 159. An evidentiary hearing is not required so long as there is a basis for the damages awarded. *Transatlantic Marine Claims Agency v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir. 1997)(citations omitted). Detailed affidavits and other documentary evidence can provide this basis. *See, e.g., Action S.A. v. Marc Rich & Co.,* 951 F.2d 504, 508 (2d Cir. 1991). Here, the plaintiffs have submitted declarations from William M. Maye, the Fund manager, and their attorney, Michael S. Adler, along with the relevant documents that support their claims. The defendant has not submitted any opposition, despite the order giving them an opportunity to do so. Upon a review of the submissions, it is determined that a hearing on the issue of damages is not necessary.

**I. Withdrawal Liability:**

Withdrawal liability arises when an employer stops contributing to a multiemployer pension plan, and is designed to "relieve the funding burden on remaining employers" by having the withdrawing employer pay its proportionate share of the plan's unvested benefits. *ILGWU Nat'l Ret. Fund v. Levy Bros. Frocks, Inc.,* 846 F.2d 879, 881 (2d Cir. 1988). ERISA provides a statutory framework for the determination of whether an employer has withdrawn and the collection of withdrawal liability payments. Pursuant to that framework, an employer withdraws

from a plan when it permanently ceases to have operations covered by a CBA or permanently ceases to have an obligation to contribute to the plan. *See* 29 U.S.C. §1383(a). Disputes over withdrawal liability determinations are generally to be resolved by arbitration, but when no arbitration proceeding is initiated, as here, the plan sponsor may bring an action in state or federal court to collect the amounts due and owing. *See Levy Bros.,* 846 F.2d at 881.

The Trustees allege that PI Trucking permanently ceased to have operations covered by the CBA and permanently ceased to have an obligation to contribute to the plan in March 2007, thereby withdrawing from the Fund within the meaning of the Trust Agreement. *See* Maye Decl. ¶16 & Ex. A, Trust Agreement, Art. XI, §2. "When an employer withdraws from a multiemployer plan, the plan sponsor, that is, the entity maintaining the plan, must determine the amount of the employer's withdrawal liability, notify the employer of the amount and make a demand for payment." *Levy Bros.*, 846 F.2d at 881. Here, the Fund engaged an actuarial firm, The Segal Company, to perform the calculation of PI Trucking's withdrawal liability. Maye Decl. ¶17. The Segal Company determined the amount of withdrawal liability to be $161,454. Report, Maye Decl. Ex. D. The Fund notified PI Trucking of this liability by a Notice and Demand letter dated March 11, 2009 and provided a schedule for withdrawal liability payments. Maye Decl., Ex. E. Pursuant to section 4219(c) of ERISA, 29 U.S.C.§1399(c), and, as provided in the notice and demand letter, PI Trucking was required to make monthly withdrawal liability payments of $5,456.33, with the first payment due on April 1, 2009. *Id.*

When PI Trucking failed to make any payments, the Trustees sent a notice of default by letter dated September 21, 2009. Maye Decl., Ex. F. PI Trucking did not demand or initiate arbitration, and thus is deemed to have waived its right to contest the assessment of withdrawal

liability. *See Bowers v. Transportacion Maritima Mexicana, S.A.,* 901 F.2d 258, 265 (2d Cir. 1990). Where a defendant does not initiate arbitration, it "waives its right to arbitration and its right to assert any defenses in [an] action seeking withdrawal liability." *Vacca v. Bridge Chrysler Jeep Dodge, Inc.,* 2008 WL 4426875, *7 (E.D.N.Y. Sept. 4, 2008). The amount of withdrawal liability becomes fixed and must be paid. *See id.; Amalgamated Lithographers of America v. Unz & Co., Inc.,* 2009 WL 4016482, *6 (S.D.N.Y. Nov. 3, 2009) (citing 29 U.S.C. §1401(a)(1), (b)(1)).

Based on the evidence submitted in support of the motion and the applicable law, it is recommended that the Trustees be awarded withdrawal liability in the amount sought, $161,454.

## II. Interest, Additional Damages, and Attorneys' Fees and Costs

ERISA provides that in any action to compel payment of withdrawal liability, "any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution" under 29 U.S.C. §1145. 29 U.S.C. §1451(b). Thus, in addition to the amount of withdrawal liability due and owing, the Fund is entitled under 29 U.S.C. §1132(g)(2), to recover interest, liquidated damages, costs and attorneys' fees. *See Transportacion Maritima,* 901 F.2d at 265; *UNITE National Retirement Fund v. Veranda Mktg. Co.,* 2009 WL 2025163, *4 (S.D.N.Y. July 13, 2009). Courts have found the award of such damages to be mandatory. *UNITE,* 2009 WL 2025163 at *4; *see also Benson v. Brower's Moving & Storage, Inc.,* 726 F. Supp. 31, 36 (E.D.N.Y. 1989).

### A. Interest

In the event of a default on payment of withdrawal liability, a plan sponsor is entitled to accrued interest on the total outstanding liability from the due date of the first payment which

was not timely made. *See Daniello v. PML Furniture Group of NJ, Ltd.,* 2009 WL 4722650, * 5 (E.D.N.Y. Dec. 9, 2009) (citing 29 U.S.C. §1399(c)(5)). Here, the first payment was due on April 1, 2009 and plaintiffs are entitled to accrued interest from that date forward.

The Trust Agreement, as amended, provides for interest at the rate of 1½% per month, or 18% per year. *See* Adler Decl. ¶5 & Trust Agreement, Art. XI, §5(d)(2). The total amount of interest due through March 18, 2011 is $57,008.74, with additional daily interest of $79.62 from March 19, 2011 through the date of judgment. Adler Decl. ¶¶5-8. It is recommended that plaintiffs be awarded interest in the amount sought.

### B. Additional Damages

Pursuant to 502(g)(2)(c) of ERISA, 29 U.S.C.§1132(g)(2)(c) and the Trust Agreement, additional damages are to be awarded in an amount equal to the greater of interest on the unpaid contributions or liquidated damages in the amount of twenty percent of unpaid contributions. *See* Adler Decl. ¶9; Trust Agreement, Art. XI, §5(e). Here, the plaintiffs seek an award of interest as additional damages. As this is the greater amount, it is recommended that plaintiffs be awarded additional damages in the amount of $57,008.74 through March 18, 2011, with additional per diem interest of $79.62 from March 19, 2011 through the date of judgment.

### C. Attorneys' Fees & Costs

ERISA requires an award of attorneys' fees and costs upon a determination that an employee benefit plan is entitled to judgment. 29 U.S.C. §1132 (g)(2)(D); *see also* Trust Agreement, Art. IX, §3(a). When assessing the reasonableness of legal fees, the court must determine the "presumptively reasonable fee" for an attorney's services by looking to what a reasonable client would be willing to pay, keeping in mind that "a reasonable, paying client

wishes to spend the minimum necessary to litigate the case effectively." *Simmons v. New York City Transit Auth.,* 575 F.3d 170, 174 (2d Cir. 2009). To calculate the presumptively reasonable fee, the court must first determine a reasonable hourly rate for the legal services performed. *Id.* Reasonable hourly rates in attorney fee awards are determined with reference to a number of factors. *See Arbor Hill Concerned Citizens v. County of Albany,* 522 F.3d 182, 186-87 (2d Cir. 2008).[1] Those factors are to be considered within the context of the relevant legal "community," traditionally defined as "the district where the district court sits." *Id.* at 190 (internal citation omitted).

Here, the plaintiffs seek $3,590.00 in attorneys' fees, based on work performed by four professionals at the hourly rates indicated: partners Peter DeChiara and Elizabeth O'Leary ($370), associate Michael Adler ($275), and paralegal David Ware ($90). Adler Decl. ¶¶13-14. Recent ERISA default cases have found rates ranging generally from $200 to $300 to be reasonable for attorneys, depending upon years of experience and whether the attorney is a partner, a senior associate or a junior associate, and $80 to $90 for paralegals. *See, e.g., Finkel v. Alltek Sec. Sys. Group, Inc.*, 2011 WL 4543498, at *10 (E.D.N.Y. Aug. 26, 2011) (approving rates of $225-250 for associate, $80-90 for paralegal); *Trustees of Plumbers Local Union No. 1 Welfare Fund v. William J. Kennedy Plumbing, Inc.,* 2010 WL 125197, at *4 (E.D.N.Y. Feb. 18,

---

[1]A non-exclusive list of factors, as articulated by the Second Circuit in *Arbor Hill*, are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitation imposed by the client or the circumstances; (8) the amount involved in the case and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." 522 F.3d at 186, n.3 (citing *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974)).

2010) (in ERISA default context, awarding $200 hourly rate for associates, but reducing $90 paralegal rate to $80); *Gesualdi v. BD Haulers Inc.,* 2009 WL 5172859, at *6 (E.D.N.Y. Dec. 22, 2009) (approving rates of $225 for associate with four years of experience and $300 for partner with forty years of experience); *Trustees of the Road Carriers Local 707 Welfare Fund v. Goldberg,* 2009 WL 3497493, at *10 (E.D.N.Y. Oct. 28, 2009) (awarding senior associate with eight years of experience rate of $250) (citing cases). There are instances, however, where attorneys' fees based on higher rates were permitted. *See, e.g., Finkel v. Fred todino & Sons, Inc.,* 2010 WL 4646493, at *5-6 (E.D.N.Y. Oct. 8, 2010) (awarding $370 for partners, $275 for associates, and $90 for paralegals); *Gesauldi v. MBM Indus.,* 2010 WL 3724848, at *2-3 (E.D.N.Y. Sept. 13, 2010)(approving rate of $390 for partners and $280 for associate in default ERISA litigation).

The Court finds that the majority of the ERISA default cases in this District favor somewhat lower hourly rates than those sought here, and thus recommends that a reasonable hourly rate would be $300 for the partners, $250 for the associate, and $90 for the paralegal. The total hours expended, 13.2, are reasonable. Accordingly, it is recommended that plaintiffs be awarded attorneys' fees totaling $3,185, broken down as follows:

| Billing Prof'l | Hours billed | Rate sought | Recommended rate | Recommended fee |
| --- | --- | --- | --- | --- |
| P. DeChiara | 2.4 | $370 | $300 | $720 |
| E. O'Leary | .1 | $370 | $300 | $30 |
| M. Adler | 9.2 | $275 | $250 | $2,300 |
| D. Ward | 1.5 | $90 | $90 | $135 |

Plaintiffs also seek costs in the amount of $511.14, consisting of a court filing fee of $350, $62 for service of process fees and $99.14 for postage, photocopies, and search fees. *See*

8

Adler Decl., ¶18 & Exs. C, D. Upon review of the documentation provided, it is recommended that these costs be awarded as well.

## CONCLUSION

For the foregoing reasons, it is recommended that plaintiffs be awarded the following damages:

- Withdrawal liability in the amount of $161,454.00;

- Interest in the amount of $57,008.74 through March 18, 2011, with additional per diem interest of $79.62 from March 19, 2011 through the date of judgment;

- Additional interest as liquidated damages in the amount of $57,008.74 through March 18, 2011, with additional per diem interest of $79.62 from March 19, 2011 through the date of judgment; and

- $3,185.00 and $511.14 in attorneys' fees and costs, respectively.

## OBJECTIONS

A copy of this Report and Recommendation is being sent to counsel for the plaintiffs by electronic filing on the date below. Plaintiffs' counsel is directed to serve a copy of this Report on the defendant and to electronically file proof of service with the court. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days. *See* 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d). Failure to file objections within this period waives the right to appeal the District Court's Order. *See Ferrer v. Woliver,* 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
December 20, 2011

    /s/ Gary R. Brown
    GARY R. BROWN
    United States Magistrate Judge